IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:24-CV-63-RJ

SAMUEL ANDREWS,

        Plaintiff/Claimant,

v.

FRANK BISIGNANO,
Commissioner of Social Security,

        Defendant.

ORDER

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-12, -14]. Claimant Samuel Andrews ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for further responsive briefing has expired, and the matter is ripe for adjudication. Having carefully reviewed the administrative record and the briefs submitted by the parties, the final decision of the Commissioner is affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability and DIB and for SSI on March 21, 2022, alleging disability beginning November 1, 2020. (R. 27, 222–35). Both claims were denied initially and upon reconsideration. (R. 27, 75–108). A hearing before the Administrative Law Judge ("ALJ") was held on August 18, 2023, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 27, 46–74). On August 30, 2023, the ALJ issued a decision denying Claimant's request for benefits. (R. 24–45). On August

8, 2024, the Appeals Council denied Claimant's request for review. (R. 11–16). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set

2

forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since November 1, 2020, the alleged onset date. (R. 29). Next, the ALJ determined Claimant had the severe impairments of Crohn's disease and major depressive disorder. *Id.* The ALJ also found Claimant's obesity, mild gastritis and duodenitis, H. Pylori infection,

3

grade/stage 1 internal hemorrhoids, gastroesophageal reflux disease, bilateral pes planus and plantar fasciitis, scar on the hand, remote history of specific learning disability, and remote history of skin cancer to be non-severe. (R. 29–30). At step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 30–31). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace; and moderate limitations in interacting with others and adapting or managing oneself. (R. 31).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with the following limitations:

> He can have occasional interaction with the public. He is limited to low-stress jobs, defined here as having only occasional changes in the work setting.

(R. 31–39). In making this assessment, the ALJ found Claimant's statements about his limitations not entirely consistent with the medical and other evidence in the record. (R. 33). At step four, the ALJ concluded Claimant was unable to perform his past relevant work as a physical instructor or restaurant host. (R. 40). Nevertheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of performing other jobs that exist in significant numbers in the national economy. (R. 40–41).

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

## V. DISCUSSION

Claimant contends that the RFC and corresponding hypothetical posed to the VE fail to account for Claimant's severe Crohn's disease and that the ALJ failed to evaluate the consistency of psychologist Mindy Pardoll's opinion with other evidence in the record. Pl.'s Br. [DE-12] at 11–20.[2] Defendant counters that the ALJ adequately considered Claimant's gastrointestinal-related symptoms and properly assessed the opinion evidence. Def.'s Br. [DE-14] at 6–27.

### A. Crohn's Disease

The ALJ determined that Claimant's Crohn's disease was a severe impairment at step two but failed to include in the RFC and hypothetical to the VE any specific limitations therefrom, such as a requirement to work in proximity to a restroom or an allowance for additional time off task for restroom breaks, to change clothes as necessary, or for deficits in concentration and focus due to pain and stomach discomfort, all of which Claimant suggests would be rationally related to his Crohn's disease. Pl.'s Br. [DE-12] at 13–14. However, because substantial evidence supports the RFC as found by the ALJ, the court finds no error.

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-

---

[2] The page numbers referenced are those found in the CM/ECF footer rather than the document's internal page number where, as here, they differ.

function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

In formulating the RFC, the ALJ first discussed Claimant's testimony from the administrative hearing. (R. 32). Claimant testified that he was laid off from his last job on November 1, 2020, due to Covid-19, moved to North Carolina, and did not pursue other jobs after moving because of his Crohn's disease and problems with his feet. (R. 32, 50–51, 54–55). The ALJ noted Claimant's testimony, specifically with respect to his Crohn's disease, including that he has issues with vomiting and emergency bathroom trips, anywhere from 4–6 up to 8–9 times a day; frequent speaking results in bad build up in the back of his throat, which makes him prone to spitting up and limits his social interactions; food odors make him nauseous; and he takes Humira once every two weeks for his Crohn's disease but he is incapacitated for two days after each injection from its side effects, which include fatigue, near constant abdominal pain, a lack of lucidity, and fogginess resulting in difficulty concentrating. (R. 32, 58–68). However, the ALJ found Claimant's statements regarding his symptoms were not fully consistent with the record, explaining as follows:

> In March 2022, the claimant stated he had fatigue for several days after the Humira injection, but the treatment record does not describe his fatigue after the injection as being "devastating" such that it caused him to be incapacitated for two days after, as the claimant asserted in testimony (Ex. 2F/1-3). The claimant also testified he has near constant abdominal pain and goes to the bathroom eight to nine times a day. However, he never complained of these extreme symptoms to his providers. In April 2021, he reported he had two to four bowel movements per day and

6

intermittent abdominal cramping (Ex. 7F/21-23). In June 2021, he reported four to five bowel movements per day. He did not complain of abdominal pain, though he had some abdominal tenderness. Of note, the claimant also said he had been moving furniture at his grandmother's house (Ex. 7F/18-20). In December 2021, he complained of rare abdominal cramping and constipation but had no other gastrointestinal concerns (Ex. 2F/5). In March 2022, he stated he was feeling well, and after three doses of Humira for [Crohn's], he had much improvement in his abdominal pain (Ex. 2F/1-3). In June 2022, he reported his stomach pain was better with Humira, and he was having five to six bowel movements per day, unless he smoked marijuana, and then he had two to three bowel movements per day. He indicated he worked on the farm occasionally and walked his dog twice a day (Ex. 7F/11-13). In June 2023, he said he had not been back to his gastroenterologist in a year (Ex. 9F).

(R. 33). The ALJ went on to discuss specific treatment records related to Claimant's Crohn's disease. (R. 34–37). Finally, the ALJ found that Claimant's alleged onset date of November 1, 2020 was not supported because that was the date Claimant was laid off from his job due to Covid-19 and relocated to North Carolina to assist his mother after his father died, and his Crohn's disease improved significantly with Humira. (R. 37).

Claimant argues that, despite the periods of improvement noted by the ALJ, he continued to have "significant digestive symptoms" as evidenced by continued reports of pain, bowel irregularities, and diagnostic findings. Pl.'s Br. [DE-12] at 14. However, the majority of treatment notes cited by Claimant predate him beginning treatment with Humira in early 2022. *Id.* (citing (R. 404–06) (May 6, 2021 colonoscopy); (R. 401–03) (June 3, 2021 EGD); (R. 397) (July 6, 2021 treatment note discussing colonoscopy and EGD results); (R. 390–91) (December 6, 2021 treatment note stating report of occasional rare abdominal cramping, no other GI concerns, and Humira approval pending)). Claimant does cite a June 13, 2022 treatment note reporting that his pain was reduced "a little" after starting Humira but was routinely a 7 out of 10, and he had bowel movements 5–6 times daily, reduced to 2–3 times daily when he smokes marijuana, (R. 543); however, Claimant also stated that his gastrointestinal doctors told him his pain would improve as

7

the Humira took effect, *id.*, and the ALJ considered not only this treatment note but also that in

June 2023, Claimant stated he had not seen his gastroenterologist in a year, (R. 33, 682), which

supports the ALJ's conclusion that his symptoms were well-controlled by Humira. Claimant also

cites a July 5, 2022 colonoscopy that demonstrated erythema and erosions in the terminal ileum

compatible with Crohn's Disease, (R. 531), but the ALJ also considered this record and the

subsequent biopsy results which revealed no features of Crohn's disease, (R. 35, 567). *See Mary*

*W. v. O'Malley*, No. 1:23-CV-128, 2024 WL 1256268, at *5 (M.D.N.C. Mar. 25, 2024) (finding no

error in the ALJ's failure to account for need to frequently access the bathroom in the RFC, where

the ALJ found that the record did not support the Plaintiff's subjective statements regarding the

intensity, persistence, and limiting effects of her IBS symptoms and the ALJ supported that

determination with substantial evidence).

This case is also distinguishable from the case of *Dowling v. Comm'r of Soc. Sec. Admin.*,

986 F.3d 377 (4th Cir. 2021), relied upon by Claimant. In *Dowling*, the Fourth Circuit identified

multiple fatal errors in the ALJ's decision, among them that "the ALJ failed to analyze whether

Appellant's RFC was impacted by her need to work near a restroom and take frequent bathroom

breaks" where there was "considerable evidence in the record demonstrating that Appellant

regularly experienced diarrhea and incontinence, as well as drainage from her anal fissure." 986

F.3d at 389. Dowling suffered from ulcerative colitis and Crohn's disease, which the Fourth Circuit

referred to collectively as inflammatory bowel disease or "IBD," and, as a result, experienced

diarrhea, abdominal pain, fatigue, body aches, and cramping, and had a painful anal fissure that

leaked and bled. *Id.* at 381. Dowling initially received a favorable decision and full award of

benefits, but the decision also noted that her condition was expected to improve with treatment,

and when her case was reviewed four years later, she was determined to be no longer disabled due

8

to medical improvement. *Id.* at 381–82.

In determining the ALJ reversibly erred, the Fourth Circuit first found that the ALJ failed to correctly evaluate the opinion of Dowling's treating physician that her IBD and other impairments limited her ability to sit or concentrate at the RFC as determined by the ALJ. *Id.* at 383–84. However, in doing so, the court acknowledged that the ALJ did not err in failing to give the opinion controlling weight because there was evidence in the record that Dowling experienced significant improvement with respect to her IBD; rather, the court found that the ALJ failed to consider the six factors required by the regulations at that time. *Id.* at 385–86. Here, there is no opinion from any of Claimant's treatment providers indicating that he was unable to perform activities consistent with the RFC found by the ALJ due to Crohn's symptoms. Next, the Fourth Circuit found that the ALJ never specifically discussed, and in fact barely mentioned, the extent to which Dowling's alleged sitting problems, due to IBD and the anal fissure, impacted her ability to perform sedentary work. *Id.* at 388. Here, there are no such alleged sitting problems related to Claimant's Crohn's disease. Finally, the Fourth Circuit faulted the ALJ for failing to analyze whether Dowling's RFC was impacted by her need to work near a restroom and take frequent bathroom breaks because there was "considerable evidence in the record demonstrating that [Dowling] regularly experienced diarrhea and incontinence, as well as drainage from her anal fissure." *Id.* at 389. Here, while the ALJ did not specifically explain why Claimant did not require an accommodation in the RFC for bathroom breaks or close proximity to a restroom, the record here is not replete with evidence that such accommodations may be necessary. To the contrary, the ALJ found that although Claimant testified "he has near constant abdominal pain and goes to the bathroom eight to nine times a day . . . , he never complained of these extreme symptoms to his providers." (R. 33). The ALJ cited records where claimant reported far fewer bowel

9

movements, and after he started Humira, his symptoms improved to the point that he had not seen his gastroenterologist in a year. *Id.* Accordingly, *Dowling* does not dictate remand in this case.

Likewise, in the case of *Laura J v. O'Malley*, cited by Claimant, the court found that the ALJ erred when he failed to adequately explain in his analysis how he accommodated Laura's chronic diarrhea in the RFC by allowing for 5% off-task time and one day absent per month. No. 7:22-CV-00402, 2024 WL 1954157, at *4–5 (W.D. Va. Feb. 14, 2024). The court explained that because the ALJ determined that Laura's diarrhea would result in some time off task, it was incumbent upon the ALJ to make specific findings about how he arrived at 5% off task, where "[t]he difference of just a few minutes per hour . . . demarcate[d] the line between a finding of 'disabled' and a finding of Laura being 'not disabled.'" *Id.* at *5. Here, the ALJ did not find that Claimant's Crohn's disease would result in any time off task for the reasons already explained, so the reasoning of *Laura J.* does not apply. *See Mary W.*, 2024 WL 1256268, at *5 (distinguishing cases where "the ALJs had all found that the claimant required access to the bathroom in the RFC determination, but then failed to make any finding as to how frequently and for how long the claimant would need bathroom breaks.").

In this case, the ALJ considered all the relevant evidence cited by Claimant, including his testimony regarding the severity of his Crohn's symptoms, and provided a thorough explanation of why Claimant's statements were not credited, including that Claimant's symptoms substantially improved with Humira to the point that he had not sought treatment from his gastroenterologist in a year. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) ("In reviewing for substantial evidence, [the court does] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ.") (citation omitted). Accordingly, the court can trace the ALJ's reasoning in not imposing additional restrictions in the RFC related

10

to Claimant's Crohn's disease and finds that the RFC is supported by substantial evidence and that the resulting hypothetical to the VE was without error.

## B. Dr. Pardoll's Opinion

The ALJ evaluated the opinion of Dr. Mindy Pardoll, who conducted a consultative clinical psychological evaluation of Claimant on December 12, 2022, finding parts of the opinion persuasive and other parts either partially persuasive or not persuasive. (R. 39, 671–77). Claimant contends that the ALJ failed to evaluate the consistency of the opinion with the other evidence of record, but the court finds the ALJ's explanation was adequate.

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The applicable regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must consider the persuasiveness of medical opinions using five factors: (1) supportability, meaning that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical finding(s) will be"; (2) consistency, meaning that the more consistent an opinion is with other evidence in the record, the more persuasive the medical opinion will be; (3) the medical source's relationship with the claimant, which considers the length of the treating relationship, frequency of examinations, purpose of the treating relationship, extent of the treatment relationship, and whether the medical source examined the claimant; (4) specialization, meaning that "a medical source who has received advanced education and training to become a specialist may be more persuasive"; and (5) "other factors that tend to support or contradict a

11

medical opinion." *Id.* §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5). The most important factors are supportability and consistency, and the decision must contain an explanation of how those factors were considered. *Id.* §§ 404.1520c(a) & (b)(2), 416.920c(a) & (b)(2). Notwithstanding, "there is no requirement that an ALJ use any 'magic words' in making findings regarding consistency and supportability." *Tyrun W. v. O'Malley*, No. 1:23CV719, 2024 WL 4349241, at \*5 (M.D.N.C. Sept. 30, 2024) (quoting *Weidner v. Kijakazi*, No. 20-1250-MN, 2022 WL 610702, at \*12 (D. Del. Feb. 1, 2022) (finding the fact that the ALJ did not use "consistency" or "supportability" is not sufficient to remand where the "ALJ plainly considered the consistency of the medical opinions with the evidence of record")). "Thus, the ALJ's failure to specify which factor, i.e., supportability, consistency, or otherwise, was eroded by contrary evidence is inapposite, so long as he (1) analyzed the relevant evidence when considering the persuasiveness of the medical opinion and (2) made his analysis of that evidence clear enough for the court to meaningfully review it." *Id.*

Dr. Pardoll's general observations included that Claimant was "friendly and cooperative during the evaluation," he exhibited "coordinated and congruent" verbal and nonverbal communication patterns, he was "able to maintain back-and-forth conversations and answered questions relevantly," and it was "easy to build rapport with him." (R. 671). Claimant reported a history of depression but had never been prescribed psychotropic medications, did not attend psychotherapy or psychiatric appointments, had never been hospitalized for mental health reasons, and lacked insight into the duration, frequency, and causes of his depression. (R. 672). Claimant reported "sad mood, lack of interest in activities, lack of motivation, feelings of hopelessness, fatigue, excessive guilt, feelings of helplessness and worthlessness, isolation, sleep difficulties, lack of concentration and lack of self-care"; it was noted that his medical issues likely

12

contributed to his depression; and he reported that his depression interfered with his customer service skills at his prior job but that he was not currently working due to his "medical issues." *Id.* On mental status examination, Claimant demonstrated lack of insight into contributing factors to his depression, fair judgment, somewhat delayed processing speed, normal speech, stable mood and affect, normal thought process and content, and average intellectual functioning. (R. 674). Claimant reported hearing "cries" and "calls" when there was no one present, but he did not seem distracted or to be responding to internal stimuli. *Id.* Dr. Pardoll diagnosed Claimant with major depressive disorder, recurrent, moderate, and summarized her findings and conclusions as follows:

> The examinee seemed to have mental health symptoms that interfere with his social and occupational functioning. Mr. Andrews was able to understand, retain and follow instructions. His attention span seemed adequate. However, his processing speed seemed somewhat delayed. It appears that his mental health issues would moderately impact his ability to perform simple repetitive tasks. Most importantly, it appears that he does not relate well to others due to his current depression. It seems that he might have difficulty socializing appropriately with other individuals in a working environment. It appears that he lacks distress tolerance skills as well as emotional regulation skills. His judgment seemed fair but his insight seemed inadequate.
>
> It seems that Mr. Andrews would benefit from attending weekly individual therapy and psychiatric appointments for possible psychotropic medications.

(R. 676–77).

The ALJ discussed Dr. Pardoll's opinion in both summarizing Claimant's medical records and in evaluating the opinion evidence. (R. 37, 39). First, the ALJ highlighted certain findings from Dr. Pardoll's consultative psychological evaluation, including Claimant's lack of any mental health treatment; that he was not working because of his medical issues; that he lived independently for the past decade before moving in with his mother to help with the farm; and that there were minimal findings on the mental status exam, e.g., he was oriented times four and had a stable mood and affect, his speech was of normal rate, tone, and volume, he had normal motor

13

function, thought process was coherent, relevant, and goal-directed, thought content was unremarkable, memory was intact, and he had fair judgment but inadequate insight. (R. 37). The ALJ immediately thereafter cited a June 7, 2023 treatment note from a follow up primary care visit where it was noted that Claimant "refuses treatment today for depression but is stable." *Id.* (citing (R.682)). The ALJ then noted that Claimant did not allege any mental impairments on his disability application, no severe mental impairment was found at either the initial or reconsideration level, and Claimant was diagnosed with major depressive disorder by a one-time consultative psychologist despite reporting no history of a mental health diagnosis, no history of mental health medications, and objectively having a stable mood/affect on exam, which is clearly a reference to Dr. Pardoll's opinion. (R. 37–38). The ALJ, therefore, expressly discussed the consistency of Dr. Pardoll's opinion with other evidence in the record, specifically a primary care treatment note indicating Claimant's depression was stable and he refused treatment, Claimant's disability application where he failed to allege depression as an impairment, and the opinions of the state agency reviewers that did not find Claimant had a severe mental impairment.

Next, in discussing the persuasiveness of Dr. Pardoll's opinion, the ALJ focused on the supportability of the opinion, citing several findings within Dr. Pardoll's opinion that the ALJ believed to be consistent or inconsistent with Dr. Pardoll's ultimate conclusions. (R. 39). Additionally, however, the ALJ cited a treatment note from July 2022, reflecting normal mental examination findings, (R. 39, 577), which goes to the consistency factor.[3] The ALJ is not required to discuss every piece of evidence in the record, *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014), and, here, because Claimant never received mental health treatment, there was

---

[3] The ALJ's opinion references Exhibit "1F/9," but this appears to be a typographical error, and the correct reference is Exhibit "7F/9."

14

little relevant evidence in the record for the ALJ to consider with regard to consistency. Finally, while Claimant argues the ALJ's analysis of the consistency factor is lacking, Claimant cites no evidence that the ALJ failed to consider. Accordingly, the ALJ's explanation of the consistency factor was sufficient to satisfy the regulation's articulation requirement.

## VI. CONCLUSION

For the reasons stated above, the final decision of the Commissioner is affirmed.

So ordered, this the 24 day of October, 2025.

Robert B. Jones, Jr.
United States Magistrate Judge

15